IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES ROMANELL, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 19-396 |
| | ) Magistrate Judge Maureen P. Kelly |
| v. | ) |
| | ) ECF No. 9 |
| CORRECT CARE SOLUTIONS, LLC and | ) |
| DAVID DRUSKIN, PA-C, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

**KELLY, Magistrate Judge**

Plaintiff James Romanell ("Plaintiff") initiated this action against Defendants Correct Care Solutions, LLC and David Druskin (collectively, "Defendants"), alleging state law professional negligence claims as well as a claim for the violation of his rights under the Eighth Amendment to the United States Constitution, arising out of Defendants' failure to provide necessary medical treatment and deliberate indifference to Plaintiff's serious medical needs.

Presently before the Court is Defendants' Partial Motion to Dismiss, ECF No. 9. For the reasons that follow, the Partial Motion to Dismiss will be denied.[1]

### I. FACTUAL AND PROCEDURAL BACKGROUND

In his Complaint, Plaintiff alleges that in late February 2017, he suffered a significant injury to his right arm when he was hit by a moving train.[2] ECF No. 1 ¶ 8. Plaintiff was treated

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to a United States Magistrate Judge conducting all proceedings in this case, including the entry of a final judgment. ECF Nos. 13, 15.

[2] Except where noted, the facts set forth in this Opinion are drawn from the allegations in the Complaint and are construed in the light most favorable to Plaintiff. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

by trauma surgeons for a complex fracture of his right humerus. Repair required an open reduction internal fixation, with the use of screws and plates to hold the bone in alignment during the healing process. Id. ¶¶ 9-10. Upon Plaintiff's release from the hospital, he was transferred to the State Correctional Institution at Fayette ("SCI – Fayette") with instructions not to perform any weight-bearing activities with his right arm. Id. ¶ 12.

At intake, SCI – Fayette medical personnel noted that Plaintiff had just been released from the hospital, with 30 surgical staples, and wearing a sling. Id. ¶ 13-15. He was assigned to bottom bunk status and was initially housed in the infirmary. Id. ¶ 17. Thereafter, Plaintiff was released to general population and assigned a top bunk. Plaintiff voiced numerous requests for a bottom bunk, given his post-surgical non-weightbearing status and history of back pain, but was told "[t]his isn't Graterford," and his request was denied. Id. ¶¶ 19-28.

Approximately two weeks later, Plaintiff was required to bear weight on his right arm to reach his bunk, and he felt something "pop" in his surgically-repaired arm. Id. ¶ 29. Plaintiff immediately reported his injury and was told to submit a sick call request. Plaintiff returned to the medical department on April 17, 2017, and was seen by Defendant Druskin, a physician's assistant, who ordered an x-ray. Id. ¶ 31. Plaintiff told Defendant Druskin that he believed he had broken his arm, but Druskin stated that nothing could be done until he reviewed the x-ray, in approximately three weeks. Id. ¶ 33. Plaintiff complained that he was in severe pain, but Druskin said there was nothing he could do, except approve bottom bunk status. Id. ¶ 35. Plaintiff returned to his cell and fashioned a splint using two plastic knives and an ace bandage. Id. ¶¶ 36-37.

The x-ray report revealed that three screws were broken at the anteromedial aspect of the humerus junction with the plate. Id. ¶ 37. The diagnostic service recommended "clinical correlation with appropriate follow up." Id. ¶ 40. Plaintiff submitted a grievance stating that he

was in extreme pain, his arm was visibly deformed, and his muscles weren't working properly. Id. ¶ 41. He followed up with an additional request for help, again complaining of "extreme pain to the point where my hand shakes." Id. ¶ 42. Despite receiving the x-ray report on April 18, 2017, Druskin did not review the report until April 27, 2017. Plaintiff saw Druskin on May 1, 2017, and Druskin noted that Plaintiff was in pain, and that his x-ray revealed three screws broken from the lower plate. Id. ¶ 45. Druskin informed Plaintiff that his bone had deviated from the plate but, despite these findings, stated there was nothing he could do because the bone was healing. Id. ¶ 46. Druskin did not order an orthopedic evaluation or treatment for Plaintiff's pain and broken surgical hardware, but did arrange for a second x-ray. Id. ¶¶ 47-48. After seeing the second x-ray, Druskin commented that he could "see what they mean now" but, rather than arrange or order treatment, he returned Plaintiff to his cell and told him the bone would "heal on its own." Id. ¶ 50. The diagnostic report revealed that the alignment of Plaintiff's arm was satisfactory but the "distal three screws in the orthopedic plate are broken … The appearance is similar to 4/17/17. Recommend clinical correlation with appropriate follow-up and additional imaging as indicated." Id. ¶ 51.

In early May 2017, Plaintiff returned to his surgeon for a scheduled follow-up. Plaintiff alleges, "[t]he surgeon was shocked by the state of Mr. Romanell's arm, and advised that he needed immediate surgery." Id. ¶¶ 52-53. Plaintiff was admitted to the hospital, and underwent surgical revision of the previous open reduction the following day. Id. ¶ 54.

Through counsel, Plaintiff filed this civil rights action, alleging a claim against Druskin for the violation of Plaintiff's Eighth Amendment rights and also alleging claims for professional negligence against both Druskin and Correct Care. Defendants responded with the pending Partial Motion to Dismiss Plaintiff's Eighth Amendment claim. ECF No. 9. The parties have filed briefs

3

in support and in opposition to the Partial Motion to Dismiss, ECF Nos. 10 and 16, and the motion is now ripe for consideration.

## II. STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). While a complaint does not need detailed factual allegations to survive the motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and sufficient "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.... Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

In other words, at the motion to dismiss stage, a plaintiff is required to make "a showing' rather than a blanket assertion of an entitlement to relief." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery

will reveal evidence of the necessary element.'" Id. at 234, quoting Twombly, 550 U.S. at 556 n. 3.

To determine the sufficiency of a complaint, "a court ... must take three steps," that include (1) taking note of the elements a plaintiff must plead to state a claim; (2) identifying allegations that are merely legal conclusions "because they ... are not entitled to the assumption of truth;" and (3) assuming the veracity of all well-pleaded factual allegations and determining "whether they plausibly give rise to an entitlement to relief." Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (quoting Iqbal, 556 U.S. at 675, 679). If the court finds, even after construing the complaint in the light most favorable to the plaintiff, that the plaintiff is not entitled to relief, the court can dismiss the claim. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

## III. DISCUSSION

Section 1983 of Title 42 of the United States Code provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

As relevant to the pending Partial Motion to Dismiss, Plaintiff alleges that Defendant Druskin violated his rights under Eighth Amendment of the Constitution. The ban on cruel and unusual punishment set forth in the Eighth Amendment to the United States Constitution extends

5

to prohibit a prison official's "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state an Eighth Amendment deliberate indifference claim, Plaintiff must plausibly allege: (1) deliberate indifference on the part of the prison official; and, (2) a serious medical need. Parkell v. Danberg, 833 F.3d 313, 337 (3d Cir. 2016). In "determining what constitutes deliberate indifference," courts "have consistently held that mere allegations of malpractice do not raise issues of constitutional import." Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). "Nor does mere disagreement as to the proper medical treatment support a claim of an [E]ighth [A]mendment violation." Id. However, officials act with deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Additionally, prison officials act with deliberate indifference by "intentional[ly] interfer[ing] with prescribed treatment." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). A "serious medical need" is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attentions." Monmouth Cty., 834 F.2d at 347 (internal quotation marks omitted).

Defendants contend that Plaintiff's allegations fail to plausibly allege that he suffered a serious medical need or that Defendants were deliberately indifferent to his need for medical treatment. ECF No. 10 at 9-12.

The Court finds that Plaintiff has pled facts that would establish that he suffered a serious medical condition and, further, that he was subjected to the unnecessary and wanton infliction of pain by Defendant Druskin, sufficient to support an Eighth Amendment claim. In particular,

6

Defendant Druskin is alleged to have ignored Plaintiff's request for a bottom bunk given Plaintiff's post-surgical status and inability to bear weight on an injured arm to lift himself to the top bunk; repeatedly failed to timely treat Plaintiff's complaints that he reinjured his arm while he was recovering from extensive surgical revision of a fracture; ignored x-rays indicating that surgical hardware implanted in Plaintiff's arm broke as a result of bearing weight on his arm to lift himself onto his bunk; ignored clinical recommendations indicating that the broken hardware in Plaintiff's arm required appropriate follow-up care; ignored a visible deformity in Plaintiff's arm; and, most egregiously, ignored Plaintiff's consistent complaints of significant pain. With these allegations, the Complaint plainly pleads that Defendant Druskin was aware of and yet deliberately indifferent to Plaintiff's serious medical needs, resulting in needless suffering and injury.

At this early stage of the litigation, Plaintiff has alleged more than sufficient facts to state a plausible claim for relief pursuant to the Eighth Amendment.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss, ECF No. 9, is properly denied. Accordingly, the following Order is entered:

### ORDER

AND NOW, this 7th day of October, 2019, upon consideration of the pending Motion for Partial Dismissal filed on behalf of Defendants Correct Care Solutions, LLC and David Druskin, PA-C, ECF No. 9, and the briefs filed in support and in opposition thereto, IT IS HEREBY ORDERED that the Motion for Partial Dismissal is denied.

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record by Notice of Electronic Filing